UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL ZWICKI and ROXANNE ZWICKI, Husband and Wife,

Plaintiffs,

v.

SUPERIOR MACHINE CO. OF SOUTH CAROLINA; VOEST-ALPINE INDUS.; VOEST-ALPINE INDUSTRIEANLAGENBAU GES.M.B.H.; and DEUTSCHE VOEST-ALPINE INDUSTRIEANLAGENBAU, G.M.B.H.,

Defendants.

CIVIL NO. 00-1942 (DSD/JMM)

ORDER

The above matter came on for hearing before the undersigned on March 18, 2002, upon Defendants Voest-Alpine Indus. and Deutsche Voest-Alpine Industrieanlagenbau, G.m.b.H.'s Motion to Compel North Star Steel to Produce Discovery [Docket No. 81] and Defendant Voest-Alpine's Motion to Compel North Star Steel Pursuant to Rule 45(c)(2)(B) [Docket No. 96]. Joel E. Smith, Esq. appeared on behalf of Plaintiffs; John F. Angell, Esq. appeared on behalf of Defendant Superior Machine Co. of South Carolina; Jeffrey W. Gunn, Esq. appeared on behalf of Defendants Voest-Alpine Indus. and Deutsche Voest-Alpine Industrieanlagenbau, G.m.b.H.; Jeffrey F. Shaw, Esq. appeared on behalf of Defendant Voest-Alpine Industrieanlagenbau, G.m.b.H.; and Jeffrey J. Lindquist, Esq. appeared on behalf of non-party North Star Steel Company.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

FILED MAY 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

IT IS HEREBY ORDERED as follows:

1. Defendants Voest-Alpine Indus. and Deutsche Voest-Alpine Industrieanlagenbau, G.m.b.H.'s Motion to Compel North Star Steel to Produce Discovery [Docket No. 81] is denied with respect to the Rule 36 Requests for Admissions. The Motion was withdrawn with respect to all other issues.

2. Defendant Voest-Alpine's Motion to Compel North Star Steel Pursuant to Rule 45(c)(2)(B) [Docket No. 96] is granted in part and denied in part as follows. Within seven days of the date of this Order:

a. North Star Steel shall produce all documents and things responsive to Subpoena Document Nos. 1, 3, 4 and 5; and

b. North Star Steel shall produce all documents and things responsive to Subpoena Document No. 2, except the 15-page report of Carl Czarnik and Bill Marshall dated December 28, 1998, and the Third Appendix to that Report, as to which the objection of North Star Steel to Document Request No. 2 is sustained.

Dated: May 8, 2002

JOHN M. MASON
United States Magistrate Judge

## MEMORANDUM

## I. TIMELINESS OF SUBPOENA/MOTION TO COMPEL

As an initial matter, North Star Steel objects to the Court entertaining the instant Motions because they are based on Defendants' efforts to conduct discovery

beyond the deadline set by the Pretrial Order. The Pretrial Order directed the Parties in the above matter to complete discovery by February 1, 2002 [Docket No. 40]. The Requests for Admissions were served upon North Star Steel by Defendants on November 21, 2001 [Docket No. 81]. It was not unreasonable for Defendants to anticipate satisfactory answers to these Requests, or resolution of a dispute arising therefrom, within the two remaining months in which to conduct discovery. Likewise, the documents which Defendants now seek by subpoena were initially sought by Defendants in their Motion to Compel on November 2, 2001 [Docket No. 43]. The Motion was granted and the dispute appeared to be resolved. It was only after North Star Steel was dismissed as a party that Defendants were required to subpoena the documents. The continuation of the present discovery disputes beyond the deadline set in the Pretrial Order is not attributable to Defendants' lack of diligence.

## II. RULE 36 REQUESTS FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendants' Motion seeks to have North Star Steel's responses to the Requests for Admissions denominated as unqualified admissions. Defendants argue that the admissions are relevant in that they would be admissible at trial as evidence of North Star Steel's culpability in causing Plaintiff's injuries. This argument is not well taken.

Admissions obtained under Rule 36, are binding only upon the party to whom the requests were directed, and may not be used against a co-party Bercerra v. Asher 105 F.3d 1042, 1048 (5th Cir. 1997). The admissibility at trial of responses to Requests for Admissions is subject to the limitations imposed by the Federal Rules of Evidence. "Admissions obtained under Rule 36 may be offered in evidence at the trial of the action,

but they are subject to all pertinent objections to admissibility. It is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent." 8A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2264 at p. 571-72 (1994).

## III. COMPLIANCE WITH SUBPOENA

### A. Sufficiency of Service

Defendants move the Court for an order compelling North Star Steel to produce documents sought by way of subpoena, pursuant to Rule 45(a)(1)(C) of the Federal Rules of Civil Procedure. Service of a subpoena "shall be made by delivering a copy thereof to such person . . .." Rule 45(b)(1). North Star Steel argues that since the service was made by certified mail, it was not "delivered" within the meaning of the Rule. It points to 9A Wright & Miller and Marcus, *Federal Practice & Procedure: Civil 2d* § 2454 at p. 24 (1994) for the proposition that "use of the word 'delivering' in the rule with reference to the person to be served has been construed literally," and it cites two cases for the same general proposition.[1]

Although the general proposition is not disputed, the cases in which the Courts have expressly considered whether service of a subpoena by certified mail is an acceptable means by which to comply with this requirement have concluded that it is sufficient. E.g. Doe v. Hersmann, 155 F.R.D. 630 (N.D. Ind. 1994); Windsor v. Martindale,

[1] In re Smith, 126 F.R.D. 461 (S.D.N.Y.1989); and Whitmer v. Lavida Charter, Inc., 1991 WL 256885 (E.D. Pa.1991).

175 F.R.D. 665 (Colo.1997). We reach the same conclusion here.[2]

**B. Standing to Assert Work-Product Privilege**

Defendants argue for the first time in their Reply Memorandum that North Star Steel lacks standing to assert the work-product privilege because it is no longer a party to this suit. In support of this argument, Defendants rely on the Ninth Circuit decision in In Re Subpoena Served on California Public Utilities Comm'n., 892 F.2d 778, 781 (9th Cir. 1989), in which the court held that the literal language of the Rule 26(b)(3) limits its protection to one who is a party to the litigation in which discovery is sought. We are not persuaded by this argument. First of all, the case does not hold that the non-party lacks protection; it only concludes that the protection is to be achieved by use of Rule 26(c), and not Rule 26(b)(3). More important, although the Eighth Circuit has not expressly addressed the issue, it has in fact extended the work-product privilege beyond the literal language of the text to apply to a non-party with an interest in the litigation at issue. Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992).

As a former party to this suit which may be held liable to Defendants in contribution for damages relating to Plaintiff's injuries, North Star Steel has a valid interest in asserting the privilege, whether considered in the context of Rule 26(b) or 26(c). For these reasons, North Star Steel may assert the work-product doctrine in opposition to production of the requested documents.

---

[2] We also note that the Objection to the Subpoena (unnumbered Exhibit to Affidavit of Jeffrey Gunn) does not state insufficiency of service of process as an objection. Since this point is not argued by the Parties, we have not considered it.

C. <u>The Merits</u>

1. **Background**

As mentioned, the documents in dispute were initially sought by Defendants in a Motion to Compel dated November 2, 2001 [Docket No. 43]. This Court determined that the documents which we now order produced were not privileged under the work-product doctrine of Rule 26(b)(3), so Defendants' Motion was granted [Docket No. 63]. North Star Steel appealed. While the appeal was pending, North Star Steel was dismissed as a party to the suit and its appeal was dismissed without prejudice [Docket Nos. 75 and 85]. Recognizing North Star Steel's status as a non-party, Defendants acknowledged that service of a subpoena upon North Star Steel was required. Defendants now seek to compel production of the same documents addressed in the January 8, 2002 Order. Having once found that the documents should be produced, the mere change in the procedural circumstance of the issue would not require a different result. However, North Star Steel has submitted a new Affidavit by Plant Manager Robert Jakse which it suggests provides new support for North Star Steel's argument that the information sought by Defendants is privileged work-product under Rule 26 (b)(3).

The Motion seeks to compel North Star Steel Company to "produce for inspection and copying all documents sought by the Subpoena served by Voest-Alpine entities on March 1, 2002." The Subpoena <u>duces tecum</u> is attached as one of the unnumbered exhibits to the Affidavit of Jeffrey Gunn. In the section in which the subpoenaed documents are to be identified, the Subpoena contains this language: "See attached Notice." Attached is a Document Request directed to North Star Steel in which five categories of documents are identified:

> "1. All photographs or video recordings made in behalf of North Star Steel or otherwise in North Star Steel's possession

> of the DC electric arc furnace in suit, or of the transfer car located there and about, recorded either before or after the subject accident.
>
> 2. All documents regarding or pertaining to North Star Steel's investigation of the subject accident, including, without limitation, those documents identified by Carl Czarnik during his deposition of January 17, 2001.
>
> 3. Tom Turk's personnel file.
>
> 4. All photographs or videotapes that depict the 'skull' alleged to have struck the plaintiff during the subject accident.
>
> 5. The minutes of 'Safety Meetings' prepared by North Star Steel using electric arc furnaces, as such were prepared between the dates of January 1, 1990 and December 24, 1998."

In the January 8, 2002 Order, this Court set forth the following standard that must be met when opposing discovery on the grounds that the materials sought are protected work product:

> "...before the party seeking discovery is required to make this showing of undue hardship and substantial need, the opposing party has the burden of demonstrating that the material meets the definition of attorney work-product. Onwuka v. Federal Express Corp., 178 F.R.D. 508, 512 (D. Minn. 1997)(citing Rabushka v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997)).
>
> In order to satisfy [its] burden, that the requested material falls within the qualified immunity of Rule 26(b)(3), [Defendant] must make three showings; namely, that the materials are: 1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and 3) by or for another party by or for that other party's representative. Onwuka, 178 F.R.D. at 512 (citing Fed. R. Civ. P. 26(b)(3))."

With the above standard in mind, we now consider whether the information contained in Mr. Jakse's newly submitted Affidavit satisfies North Star Steel's burden.

**2. Subpoena Document Nos. 1, 3, 4 and 5**

The pleadings submitted by North Star Steel in opposition to the Motion do not identify the documents in dispute by reference to the paragraph numbers in the Subpoena. The Memorandum seeks to support an objection to the production of "North Star Steel's investigation file," and the context of the pleadings submitted in opposition suggests that the objection is to the documents sought by paragraph 2 quoted above. In any event, we perceive no legal argument which would warrant the failure to produce the documents called for by paragraphs 1, 3, 4 and 5 in the Subpoena, and they are not mentioned in the Affidavit of Mr. Jakse.

**3. Subpoena Document No. 2**

Subpoena Document Request No. 2 seeks "all documents regarding or pertaining to North Star Steel's investigation of the subject accident, including, without limitation, those documents identified by Carl Czarnik during his deposition of January 17, 2001." The Court previously held that the materials did not fall within the definition of attorney-work product because the evidence at that time established that accident investigations were routinely conducted at North Star Steel's plant. Further, in conducting the investigation following Plaintiff's accident there was nothing more than a concern on behalf of North Star Steel over possible legal liability. The new Affidavit from Mr. Jakse contends that the following documents were prepared under the direction of an attorney, in anticipation of litigation:

- A 15-page Report dated December 28, 1998, prepared by Carl Czarnik and Bill Marshall at the request of attorney Mark J. Isaacson;

- Appendix one to the Report - three-page report containing measurements of the skull [sic] that was believed to have struck Mr. Szicki and the bottom of the roof where the skill [sic] was presumed to have fallen from;

- Appendix Two to the Report - 13 pages captioned "The following are some procedures and documentation that pertain to the incident";

- Appendix Three to the Report - notes taken during investigation by Carl Czarnik, Bill Marshall and Al Foster.

The Affidavit of Plant Manager Robert Jakse substantiates the following differences between the investigation conducted in this case and an investigation that is routinely conducted: the investigation was expressly initiated by North Star Steel's attorney and conducted under his direction in response to this specific incident, whereas a routine investigation is initiated solely by plant management; the attorney assembled an investigation team of "upper" plant management and directed a more comprehensive investigation, whereas a routine investigation would typically involve only a direct supervisor and a plant manager; the materials produced by the investigation far exceed the one-page report that would typically be generated; North Star Steel's attorney directed the investigation team to keep the results of any information obtained from the investigation strictly confidential and was consulted before the investigation report was reduced to final form. All of this was done with the expectation and anticipation that litigation would ensue, as would an OSHA investigation.

We are satisfied that the 15-page Report and Appendix Three to that Report were prepared in anticipation of litigation, and deserve protection from discovery. These documents were not prepared in the ordinary course of business, nor are they of the type

which would be expected to be prepared in the ordinary course of business. They were clearly prepared at the direction of an attorney, and the likelihood of litigation motivated that attorney. Indeed, the fact that an attorney was specially retained to oversee the investigation itself serves to substantiate the view that North Star Steel in fact anticipated the likely potential of litigation.

We are not persuaded that the information in Appendices One and Two is protectible as attorney-work product. The information as to the contents of these appendices comes to us only from the title, and the Parties have not separately addressed the issue, but these appear to represent factual data, not mental impressions of any expert, and the sort of information that would normally be collected by the company in the ordinary course of business. See Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992)(materials prepared in the ordinary course of business are not protected work product).

J.M.M.