UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1942(DSD/SRN)

Michael Zwicki and Roxanne Zwicki, husband and wife,

Plaintiffs,

v.

**ORDER**

Superior Machine Co. of South Carolina,

Defendant,

and

Voest-Alpine Industries, Inc., Voest-Alpine Industrieanlagenbau, Ges.m.b.H, and Deutsche Voest-Alpine Industrieanlagenbau, GmbH,

Defendants,

James F. Lord, Esq. and Lord & Associates, 600 78th Street West, Suite 200, P.O. Box 729, Chanhassen, MN 55317; Mark R. Kosieradzki, Esq. and Kosieradzki Law Office and Joel Erin Smith, Esq., Smith Law Office, 13100 Wayzata Boulevard, Suite 140, Minnetonka, MN 55305.

Steve W. Gaskins, Esq., Patrick R. Martin, Esq. and Flynn, Gaskins & Bennett, 2900 Metropolitan Center, 333 South 7th Street, Minneapolis, MN 55402; William J. Morris, Esq., Jeffrey W. Gunn, Esq. and Morris & Stella, 200 Adams Street West, Suite 1200, Chicago, IL 60606.

Jeffrey F. Shaw, Esq., Michelle K. Peterson, Esq. and Briggs & Morgan, W2200 First National Bank Building, 332 Minnesota Street, St. Paul, MN 55101.

John F. Angell, Esq. and Stich, Angell & Kreidler, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401.

FILED 7-31-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

This matter is before the court on the following motions: (1) defendants' motion in limine to exclude expert testimony [Doc. No. 124]; (2) defendants Voest-Alpine Industries and Deutsche Voest-Alpine Industrieanlagenbau motion for summary judgment [Doc. No. 120]; (3) defendant Voest-Alpine Industrieanlagenbau's motion for summary judgment [Doc. No. 105]; and (4) plaintiffs' motion for partial summary judgment aggregating liability [Doc. No. 90].

Based on a review of the file, record and proceedings herein, the court will: (1) deny defendants' motion in limine to exclude expert testimony; (2) deny the motion of defendants Voest-Alpine Industries and Deutsche Voest-Alpine Industrieanlagenbau for summary judgment; (3) grant defendant Voest-Alpine Industrieanlagenbau's motion for summary judgment; and (4) grant in part and deny in part plaintiffs' motion for partial summary judgment.

**BACKGROUND**

North Star Steel employee, Michael Zwicki ("Zwicki") and his wife Roxanne Zwicki bring this lawsuit for injuries that Zwicki sustained on December 24, 1998, when a large piece of metal slag fell from the roof of an electric arc furnace at North Star Steel, St. Paul, Minnesota, ("North Star") striking Zwicki and rendering him paraplegic. Zwicki, a crane operator, had been directed by his foreman supervisor, Tom Turk, to go with three other employees to

the base of the arc furnace to clean and sweep out debris and other steel byproducts which had accumulated in that area. While Zwicki was working in the base area of the furnace, the roof of the arc furnace was opened which caused a large piece of metal slag to dislodge and hit Zwicki on the head.

The crux of plaintiffs' lawsuit is that the electric arc furnace system was defective in design since there should have been safeguards, such as audible and visual alarms and a delay mechanism with respect to the opening of the furnace roof, to warn anyone beneath the furnace that the roof would be opening given the concurrent danger that pieces of slag might fall from the roof to the ground during the process.

Voest-Alpine Industries, Inc. ("VAI, Inc.") is a Pittsburgh, Pennsylvania corporation that entered into a contract with North Star to design, erect and commission a DC arc furnace. Deutsche Voest-Alpine Industrieanlagenbau ("DVAI"), is a Dusseldorf, Germany company that designed the DC electric arc furnace for VAI, Inc. During the relevant time period of 1993 to 1998, Voest-Alpine Industrieanlagenbau of Linst, Austria ("VAI Austria") was the parent company of DVAI, owning 100 percent of DVAI's shares. VAI Austria was also a minority shareholder of VAI, Inc., owning approximately 15 percent of the shares of VAI, Inc.

Superior Machine Company was the manufacturer of the DC electric arc furnace at issue in this case.[1] A steel plant in St. Paul, Minnesota, is operated by North Star, the employer of Zwicki. North Star contracted with VAI, Inc. to design, erect, and commission a DC arc furnace. North Star was initially brought into this action as a third-party defendant but has been dismissed pursuant to this court's order dated February 1, 2002 [Doc. No. 75].

## DISCUSSION

### I. Defendants' Motion to Exclude Expert Testimony

Defendants VAI, Inc. and DVAI (the "Voest-Alpine Entities"), move this court to exclude the testimony of plaintiffs' expert witnesses, John Bass and Tarald Kvalseth, Ph.D.

Defendants argue that Dr. Kvalseth and Mr. Bass should be excluded as experts because neither are qualified to testify as to what is reasonably foreseeable when operating an electric arc furnace in a steel-making melt shop and that neither are qualified to offer opinions concerning alternative designs of electric arc furnaces. Defendants further assert that there must be a showing of a reasonable nexus between the qualifications of the expert and

---

[1] Superior Machine's motion for summary judgment was granted, unopposed, at the hearing on April 19, 2002. All claims against defendant Superior Machine were dismissed with prejudice in an order dated April 19, 2002 [Doc. No. 139].

the matters to which the expert directs his or her opinions. Plaintiffs counter that the testimony of their expert witnesses is relevant since both possess expertise in the field of industrial safety engineering and human factors risk analysis in industrial settings.

The admissibility of expert testimony is governed by Rule 702 and Rule 703 of the Federal Rules of Evidence. The proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702. See Lauzon v. Senco Prods. Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Weinstein's Federal Evidence § 702.02 (2001)). First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. Id. This is the basic rule of relevancy. Id. Second, the proposed witness must be qualified to assist the finder of fact. Id. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." Id.; see also Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591 (1993).

The basis for the third prerequisite lies in the recent amendment of Rule 702, which adds the following language to the former rule: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods

reliably to the facts of the case." Fed. R. Evid. 702.[2] The language of the amendment codifies Daubert and its progeny. Id.

In Daubert, the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. Daubert, 509 U.S. at 591-93; see also Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1040 (8th Cir. 1999) (during the evaluation "of expert testimony under Federal Rule of Evidence 702, the district court must lock to both the relevancy and the reliability of the testimony"). Daubert provides a number of nonexclusive factors a court can apply in performing this role: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been

---

[2] Federal Rule of Evidence 702, in its entirety, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

generally accepted." Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996) (citing Daubert, 509 U.S. at 593-94).[3]

The chief issue here in defendants' objection to plaintiffs' proposed experts appears to center on the question of relevancy. Defendants assert that neither expert is qualified to testify in this case since neither has specific experience in the steelmaking industry or in the operation of electric arc furnaces. Defendants do not question the underlying qualifications of plaintiffs'

[3] The Eighth Circuit has been consistent in its application of the language of Daubert and Federal Rule of Evidence 702. See, e.g., Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998) (finding expert testimony offered by defendant as to possible causes of baby's brachial plexus injuries admissible but excluded plaintiff's medical expert's testimony that flexion during delivery was the most likely explanation for the baby's injuries on grounds outside of Daubert; it was offered for the first time in rebuttal and not the case in chief); Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1299 (8th Cir. 1997) (admitting testimony of well-qualified psychiatrists and psychologists on issue of damages for mental anguish and emphasizing that weight and credibility accorded to the testimony is left to the trier of fact); United States v. Davis, 103 F.3d 660, 674 (8th Cir. 1996) (finding expert testimony on ballistics was admissible based upon Daubert factors after a preliminary evidentiary hearing was held); United States v. Beasley, 102 F.3d 1440, 1447 (8th Cir. 1996) (allowing PCR method of DNA testing to be admitted due to its reliability, as demonstrated by applying the Daubert factors); Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 973-76 (8th Cir. 1995) (allowing physician to testify as to position emission tomography scan of employee's brain, polysomnogram, and that employee's manganese encephalopathy was caused by inhalation of manganese fumes at employer's plant after analyzing the testimony in light of Daubert ); United States v. Johnson, 28 F.3d 1487, 1497 (8th Cir. 1994) (allowing a coconspirator and gang member to testify as an expert regarding drug trafficking, which was found helpful to the jury, due to his extensive experience in the business of drug trafficking, evidenced by his six years establishing various drug distribution centers in assorted cities).

experts conceding that both are "highly skilled and knowledgeable men, with very impressive resumes." (Def.'s Mem. at 14.) They do, however, challenge whether a reasonable nexus exists between their qualifications and the matters to which they will direct their opinions, in other words, the relevancy of their expert testimony.

After careful consideration, the court concludes that plaintiffs do meet the burden of showing, by a preponderance of the evidence, that there is a reasonable nexus between the qualifications and proposed testimony of the experts and the matters at issue in this case. That is, the court believes that the requirement of relevancy is satisfied. Both are experts in the field of industrial safety engineering and human factors risk analysis. Dr. Kvalseth is a mechanical engineer who has a doctorate in industrial engineering and operations and has been a professor at the University of Minnesota since 1982 in its mechanical engineering department. He is the director of the division of industrial engineering. He has focused his research, teaching, scholarship and consulting work on human factors in the workplace and safety ergonomics. He has authored an engineering textbook and numerous scholarly articles concentrating on ergonomics and human factors in the workplace. Dr. Kvalseth has also served as a consultant evaluating and assessing the interaction of machines in the workplace and industrial machine

safety. In this capacity, he has been a consultant to the steel-making and foundry industry.

Mr. Bass is a licensed mechanical engineer and electrical engineer who has been extensively involved in analyzing electrical systems and their components as they relate to industrial injuries or accidents. Mr. Bass has also worked with microcontrollers and instruments as they might apply to the furnace here. (See Pl.'s Mem. at 8.) He has designed control systems for industrial machinery and is familiar with the system here from a control and safety standpoint.

The court believes that plaintiffs have met their burden of establishing the relevant nexus between these expert's qualifications and their proposed testimony and the subject matter of this suit since plaintiffs' alleged claim of product liability centers on an assertion that the arc furnace was defectively designed because it failed to provide warnings of a hazardous condition in an industrial setting. In other words, the expertise here involves human factors and risk analysis as it applies to machine design and workplace safety. As plaintiffs point out, "this case is not about how much electricity is needed to melt steel, [it] is about a large industrial machine with moving parts, functioning in an industrial setting. ... The expertise involves human factors, risk and hazard analysis." (Pl.'s Mem. at 5.) The court agrees, and concludes that plaintiffs have satisfied their

burden in demonstrating that the qualifications of the experts proposed by plaintiffs is adequate and their testimony is relevant to the matter at hand and would be useful to the finder of fact.

The court also believes that plaintiffs have met their burden in demonstrating that the experts' opinion here is reliable. In particular, plaintiffs have satisfied the Daubert requirements. As discussed, Daubert requires four factors for district courts to consider in determining the admissibility of expert testimony: (1) whether the expert's hypotheses can be or have been tested; (2) whether the expert's methodology has been subject to peer review; (3) the rate of error associated with the methodology; and (4) whether the methodology is generally accepted within the scientific community. See Daubert, 509 U.S. at 593-594. The court concludes that each of the four Daubert elements has been met in the present case.

Plaintiffs correctly assert that the experts' theory can and has been tested. As plaintiffs point out, warning systems and safety warning lights can be and have been used in countless industrial settings for years.[4] Plaintiffs have also demonstrated that the experts' theory here has been subjected to peer review and

---

[4] The court notes that plaintiffs have extensively briefed the alternative design used by other manufacturers as well as subsequent installation of safety warning systems and at North Star's plant. (See Pl.'s Mem. at 11-25.)

publication.[5] The court also believes that plaintiffs have demonstrated that the technical experts here have based their opinions on generally accepted principles in the scientific community.[6] In other words, the court believes that plaintiffs' experts' testimony is based upon sufficient facts and data and is the product of reliable principles and methods as applied to the facts of this case. See Fed. R. Evid. 702.[7] The court also concludes that plaintiffs have adequately shown that the experts here base their opinions on their own independent scholarly research and experience. In sum, the court concludes that plaintiffs have met the burden of establishing by a preponderance of the evidence that the requirements of Daubert and the Federal Rules of Evidence are satisfied and that the experts are qualified to testify. Accordingly, defendants' motion to exclude the experts is denied.

---

[5] The court notes that in addition to authoring a textbook on the subject, Dr. Kvalseth has also authored nearly 100 scholarly peer-reviewed articles on the interface between humans and machinery in the workplace and has served as a peer reviewer on scientific journals in the same field.

[6] The principles and methodology of human factors and industrial safety design are well-established academic fields and have been the subject of peer-reviewed published scholarship for numerous years.

[7] The court also concludes, on the same grounds, that plaintiffs satisfy the requirements of Fed. R. Evid. 703. Both experts received their factual basis from an extensive review of the record as well as their personal observations including firsthand visits to the North Star facility and the OSHA investigation record.

## II. Defendants' Motion for Summary Judgment

The Voest-Alpine Entities also move pursuant to Rule 56 for summary judgment asserting that plaintiffs' cause of action for product liability against the Voest-Alpine Entities fails as a matter of law if this court grants their motion in limine to exclude the plaintiffs' experts. Since the court has denied the motion to exclude, defendant's motion for summary judgment fails.

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. Summary Judgment Inappropriate**

Because the court has ruled that plaintiffs' experts shall not be excluded and because the court believes that there are material facts in dispute regarding plaintiffs' claims against the Voest-Alpine Entities, the court concludes that summary judgment is inappropriate.

Plaintiffs bring this action asserting strict liability, negligence and breach of warranty. In particular, plaintiffs allege that the electric arc furnace at issue was defectively designed insofar as it failed to incorporate warning devices that would activate upon the movement of the furnace's roof. Plaintiffs also allege a claim of failure-to-warn incorporating the same concept of missing warning devices. A failure-to-warn theory and a defective design theory are separate and distinct causes of

action. Kallio v. Ford Motor Co., 407 N.W.2d 92, 99 (Minn. 1987) ("Even though a product may not be defectively designed ... a duty to warn may [independently] exist."). Under Minnesota law, strict liability and negligence theories of recovery effectively merge in a product liability case alleging defective design. Bilotta v. Kelley Co., 346 N.W.2d 616, 623 (Minn. 1984). In failure-to-warn cases, on the other hand, a plaintiff may seek damages for both negligence and strict liability but may only submit the case to the jury on one theory. Hauenstein v. Loctite Corp., 352 N.W.2d 272, 275 (Minn. 1984) ("we hold that ... where a plaintiff seeks damages for both negligence and strict liability based solely upon failure to warn, the plaintiff may submit the case the case to the jury on only one theory.").[8] Claims for implied warranty of merchantability are preempted by concurrent claims for strict liability. Continental Ins. Co. v. Loctite Corp., 352 N.W.2d 460, 463 (Minn. Ct. App. 1984). Given the facts of this case and the applicable law, the court believes that plaintiffs' action here lies in strict tort liability or negligence on a claim for product design defect and a claim for failure to warn.

To recover in strict liability for defective design under Minnesota law, a plaintiff must show that: First, the defendant's

---

[8] In other words, "[t]he plaintiff can plead and prove at trial either or both theories, but by time the parties rest, the plaintiff must announce whether the case will be submitted to the jury on negligence or strict liability." Id.

product must have been in defective condition unreasonably dangerous for its intended use; second, the defect must have existed when the product left the defendant's control; and third, the defect must have been the proximate cause of the injuries sustained. See Bilotta, 346 N.W.2d at 623. These elements are common to strict liability or negligence claims. Worden v. Gangelhoff, 241 N.W.2d 650, 651 (Minn. 1976).

Defendants' motion is primarily based on the first element, contending that there was no defective condition associated with the furnace that defendants designed and sold to North Star. In particular, defendants assert that there is no evidence in the record that establishes that the furnace was in a defective condition or unreasonably dangerous when sold. Defendants' argument is based entirely on a presumption that the court will exclude the opinions of plaintiffs' expert witnesses. (See Defendants' Mem. at 23-24.) As discussed, the court will not exclude plaintiffs' experts. Moreover, the court believes that there are material facts in dispute regarding whether or not the furnace was in a defective condition or was unreasonably dangerous when sold. Thus, summary judgment is inappropriate and must be denied as it pertains to this claim. See Celotrex Corp., 477 U.S. at 322-23.

Defendants also assert that there is insufficient evidence to support a failure-to-warn claim. Specifically, defendants contend

that there is no evidence in the record to support a determination that at the time of the furnace's sale, it was reasonably foreseeable that persons would be under the furnace's roof when it was open. Generally speaking, all manufacturers have a duty to provide instructions for the safe use of a product as well as a duty to warn of foreseeable dangers inherent in the proper use, or reasonably foreseeable improper use, of a product. Kallio, 391 N.W.2d at 860. Whether there is a duty to warn is generally a question of law for the court to decide. Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn. 1986). In determining whether a duty to warn exists, "a court goes to the event causing the damage and looks back to the alleged negligent act," and if the connection "is direct and is the type of occurrence that was or should have been reasonably foreseeable," the court will hold as a matter of law that a duty exists. Id. at 924.

In the present case, the court believes that there is sufficient evidence in the record to establish that it was reasonably foreseeable that persons would at times of cleanup or repair be below the furnace when the roof of the furnace was open or in the process of opening.[9] Moreover, when viewing the evidence

---

[9] See Whirry Dep. at 45; Marshall Dep. at 26-28; Bullinger Dep at 35; see also Defs.' Mem. at 11 ("the record in this case reveals isolated incidents in which persons did enter [the area below the furnace] while the furnace was operating"); and 13 ("[t]here were times ... when workers are required to work or pass under the furnace roof in the opened position.").

in a light most favorable to the non-moving party, as is required by Fed. R. Civ. P. 56, genuine issues of material fact exist in support of plaintiffs' prima facie case, and defendants' motion for summary must be denied. See Celotrex Corp., 477 U.S. at 322-23.[10]

**III. The Summary Judgment Motion of Voest-Alpine Industrieanlagenbau**

Defendant VAI Austria moves for summary judgment asserting that since it neither designed, manufactured, nor sold the arc furnace at issue here, it must be dismissed from this action as a matter of law. Moreover, it asserts that when considering the undisputed facts, and under Minnesota law, plaintiffs cannot attribute any liability to VAI Austria. It also argues that VAI Austria cannot be considered to be part of a joint venture or joint enterprise with the other Voest-Alpine Entities.

After careful review, the court agrees with VAI Austria's position. VAI Austria is not directly liable to plaintiffs since the record clearly establishes that VAI Austria did not manufacture, design, sell or exercise significant control over the North Star furnace. In fact, VAI Austria does not even make the type of DC furnace at issue in this lawsuit. (See Perndl Dep. at 56.) The record indicates that the DC arc furnace at issue was solely designed by DVAI, and VAI, Inc. was solely responsible for

[10] Defendants have also based this motion for summary judgment, as it pertains to the failure-to-warn theory, on the presumption that the court would exclude plaintiffs' experts which, as discussed, is not the case. (See Defs.' Mem. at 27.)

the execution of the design. It was DVAI and VAI, Inc. that worked together to design, sell and install the DC arc furnace in the North Star plant. The contract for the project was between VAI, Inc. and North Star. Thus, plaintiffs' claim against VAI Austria fails.

Plaintiffs' primary basis for asserting that VAI Austria should be held liable arises from the fact that two of VAI Austria's employees, Karl Perndl and Peter Wimmer, worked on the North Star project for VAI Inc. on a contract basis and VAI Austria provided the services of an erection supervisor to VAI Inc. on that same basis to work on the project. Additionally, one of the VAI Austria employees used an erection manual that he had requested from his home office. (See Perndl Dep. 53.) The VAI Austria employees were billed for and paid separately as independent contract employees, and VAI Inc. was separately billed for the services of the erection supervisor. (See Peterson Aff. Ex. B.) The erection manual was requested by and sent to the individual employee, not VAI, Inc. There is nothing of further significance in the record to support an assertion that VAI Austria exercised control over the design or erection of the furnace, or to create an issue of material fact.[11] The court is unpersuaded by plaintiffs'

---

[11] Although plaintiffs point to several other factors that they contend indicate that VAI Austria "stepped in to take over" the North Star project, the court is unpersuaded by this argument. (See Pls.' Mem. at 8.) In particular, the June 18, 1993 press (continued...)

allegation that VAI Austria, by hiring out its employees and services for a fee, "took over" or exercised significant control over the project. The undisputed facts simply do not support plaintiffs' assertion.

Since the court sees no other basis in the record to support plaintiffs' claims as they relate to VAI Austria and sees no grounds to support plaintiffs' assertion that VAI Austria is liable under either a theory of joint venture or joint enterprise,[12] the court concludes that VAI Austria must be dismissed from this lawsuit.

Moreover, the court believes that Minn. Stat. § 544.41 is not applicable to VAI Austria.[13] There is no evidence to support

---

[11](...continued)
release that plaintiffs cite does not mention VAI Austria. (Peterson Aff., Ex. C.) Mr. Perndl's duties while working on the North Star project were separately invoiced and he did not have a role in designing the furnace but merely coordinated supplies and installation according to DVAI's engineering plan. (See Perndl Dep. at 18.) Mr. Wimmer's engineering services were separately invoiced and paid. The erection supervisor that VAI Austria provided was also an independent contractor and was separately billed out at $5,000.00. (See Peterson Aff. Ex. E.) Any list of furnaces that VAI Inc. may have initially provided to North Star does not create liability for VAI Austria. Lastly, while there was a request for a "subsidy" from VAI Austria, there is no evidence in the record that VAI Austria ever agreed to make such subsidy for the North Star project. (See Perndl Dep. at 60.)

[12] The court will analyze the joint venture and joint enterprise question more fully, infra, at 20-22.

[13] Minn. Stat. § 544.41 provides in relevant part :

> Subdivision 1. In any product liability action based in whole or in part on strict

(continued...)

plaintiffs' assertion that VAI Austria exercised "significant control" over the erection of the furnace as required by that statute. See Gorath v. Rockwell Intern, Inc., 441 N.W.2d 128, 131 (Minn. Ct. App. 1989) (evidence must support conclusion that defendant exercised significant control over product). As discussed, the involvement of VAI Austria was limited to the involvement of its two employees and an erection supervisor, who were independently contracted out to VAI Inc. and separately paid, and the fact that one of the employees requested and received an erection manual from the home office. These facts do not rise to the level of significant involvement.

Accordingly, defendant VAI Austria's motion for summary judgment is granted and all claims are dismissed with prejudice as they relate to VAI Austria.

---

[13](...continued)

> liability in tort commenced or maintained against a defendant other than the manufacturer...

Subd. 3. A court shall not enter a dismissal order ... where the plaintiff can show one of the following:

> (a) That the defendant has exercised some *significant control* over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;
>
> (b) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (c) That the defendant created the defect in the product which caused the injury, death or damage.

**IV. Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs have moved for partial summary judgment asserting that this court should aggregate the liability of the three remaining defendants. In particular, plaintiffs move the court to find that a joint enterprise or joint venture existed between VAI Austria and the other Voest-Alpine Entities. Defendants Voest-Alpine Industries and Deutsche Voest-Alpine Industrieanlagenbau did not respond to this motion, or directly oppose it, and the court will grant the motion as it relates to these two defendants. As plaintiffs' motion relates to aggregation of liability between VAI Austria and the other Voest-Alpine Entities, the court is unpersuaded by plaintiffs' argument and will deny that motion.

Under Minnesota law, plaintiffs may not use theories of joint venture or joint enterprise to attribute a corporation's liability to its shareholders or its parent corporation. See Stelling v. Hanson Silo Co., 563 N.W.2d 286, 290-291 (Minn. Ct. App. 1997) (a joint venture or joint enterprise generally only "arises when necessary to impute negligence between two entities that otherwise have no legal relationship."); see also Beehner v. Cragun, Corp., 636 N.W.2d 821, 832 (Minn. Ct. App. 2001) ("courts apply the joint venture or joint enterprise doctrine when necessary to impute negligence between two entities that otherwise have no legal relationship.").

Because VAI Austria already has a legal relationship with the other Voest-Alpine Entities as a parent corporation and as a shareholder, it cannot, therefore, as a matter of law be in a joint venture or enterprise with the other two corporations.

Plaintiffs' entire theory of VAI-Austria's liability appears to be based upon a premise that a parent corporation is responsible for the acts of its corporate subsidiary. It is, however, axiomatic that someone injured by the conduct of a corporation or one of its employees can only look to the assets of the employee or employer corporation for recovery. See Radaszewski v. Telecom Corp., 981 F.2d 305 (8th Cir. 1992). Neither the shareholders of the corporation nor the parent corporation are held responsible for the injury. See id. "The mere fact that one corporation holds all of the stock in another does not render it liable for the torts of the latter." 10 Julie Rozwadowski and James Perkowitz-Solheim, Fletcher Cyclopedia of the Law of Private Corporations § 4878, at 350 (Perm ed. 1993); see also Polanco v. H. B. Fuller, Co., 941 F. Supp. 1512, 1519 (D. Minn. 1996).[14] Plaintiffs may therefore only

---

[14] The Court also notes that the American Law of Products Liability treatise explains, "a non-manufacturing corporation is not vicariously liable for the alleged tortious conduct of the manufacturer of an injury causing product even though the non-manufacturing corporation owns a large portion of the stock of the manufacturer where the manufacturer is not a dummy or sham corporation and does not operate as a mere instrumentality of the non-manufacturer, but rather the two corporations operate as separate entities, maintaining separate physical facilities, their own books and accounts, and the non-manufacturer does not control

(continued...)

impute liability to VAI Austria by showing that the corporate veil should be pierced.

The Minnesota Supreme Court recognizes very limited circumstances where the corporate veil may be pierced. In Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc., 283 N.W.2d 509 (Minn. 1979), the Court described the factors to be considered to pierce the corporate veil: insufficient capitalization for purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely a facade for individual dealings. Id. at 512. This court also recognizes that, in analyzing these factors, its focus must lie "with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." Victoria Elevator, 283 N.W.2d at 512.

Here, plaintiffs do not specifically allege the existence of any of these factors, but point generally to VAI-Austria's alleged control over the North Star furnace project. The undisputed facts in this case, however, are that DVAI and VAI, Inc. are not mere instrumentalities or alter ego's of VAI Austria, but rather the

---

[14](...continued)
or contribute in any way to the manufacture of the product. 1 Am. L. Prod. Liab. 3d, § 6:8 (1994).

companies are, as plaintiffs concede, "separate legal entities." (Pls.' Mem. at 2.) There is no evidence that any of the corporations has failed to follow corporate formalities or that they are sham corporations or facades. Plaintiffs' claim for an aggregation of liability as to VAI Austria fails.[15]

Accordingly, and also taking into consideration the court's decision to grant VAI Austria's motion for summary judgment because it is not a proper defendant in this lawsuit, plaintiffs' motion for summary judgment on the basis of an aggregation of liability theory is denied as it relates to defendant Voest-Alpine Industrieanlagenbau.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for exclusion of expert testimony [Doc. No. 124] is denied;

2. Defendants Voest-Alpine Industries and Deutsche Voest-Alpine Industrieanlagenbau's motion for summary judgment [Doc. No. 120] is denied;

---

[15] Furthermore, the court agrees with defendants' assertion that even if joint venture or joint enterprise law could be applied to VAI Austria, plaintiffs' argument still would fail since plaintiffs cannot meet the specific requirements to find a joint enterprise or joint venture under Minnesota law. See Meyers v. Postal Financial Co., 287 N.W.2d 614, 617-18 (Minn. 1979); Krengel v. Midwest Automatic Photo, Inc., 203 N.W.2d 841 (1973). See also Walton v. Fugita Tourist Enterprises Co., 380 N.W.2d 198, 202 (Minn. Ct. App. 1986).

3. Voest-Alpine Industrieanlagenbau's motion for summary judgment [Doc. No. 105] is granted;

4. All claims against Voest-Alpine Industrieanlagenbau are dismissed with prejudice; and

5. Plaintiffs' motion for partial summary judgment [Doc. No.90] is granted in part, as it relates to defendants Voest-Alpine Industries and Deutsche Voest-Alpine Industrieanlagenbau, and is denied in part, as it relates to defendant Voest-Alpine Industrieanlagenbau.

Dated: July 31, 2002

David S. Doty, Judge
United States District Court